```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLOVER POOL SUPPLY CO., INC.,

                          Plaintiff,              05-CV-6372T

                  v.                              DECISION
                                                  and ORDER
CENTRAL NY NEWS, INC.,

                          Defendant.
_____
```

### INTRODUCTION

Plaintiff, Clover Pool Supply, Inc., ("plaintiff" or "Clover Pool") brings this action pursuant to New York General Business Law § 349 ("GBL § 349") against Central NY News, Inc. ("defendant" or "Central NY News") alleging breach of contract and damages. Defendant moves to dismiss the Second Claim of the Amended Complaint alleging a violation of GBL § 349 pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that it fails to state a claim as a matter of law. For the reasons set forth below, the Second Claim against defendant claiming a violation of GBL § 349 is dismissed.

### BACKGROUND

**I.   Procedural History**

On July 15, 2005, plaintiff filed suit against Clear Channel Broadcasting alleging breach of contract and damages pursuant to GBL § 349. On September 12, 2005, Clear Channel Broadcasting moved to dismiss the action pursuant to Federal Rule of Civil Procedure

12(b)(6) arguing that plaintiff had sued the wrong party.[1] On September 27, 2005, in response to defendant's motion, plaintiff moved to amend the summons and complaint by changing the named defendant from Clear Channel Broadcasting to Central NY News pursuant to Federal Rules of Civil Procedure 4(a), 15(a) and 15(c). By Order dated January 19, 2006, the complaint against Clear Channel Broadcasting was dismissed. Further, I granted plaintiff's motion to amend the summons and complaint and directed that plaintiff serve both the amended summons and complaint upon the proper defendant.

**II.  Factual History**

In 1998, Clover Pools, a local pool equipment supply company in the business of selling swimming pools, spas, patio furniture and home leisure products, through its advertising agency[2] entered into an agreement to purchase advertising on TV-13. The contracting arrangements between Clover Pools and Central NY News for these commercials consisted of a series of quarterly agreements. Plaintiff alleges that under the terms of the contracts, Central NY News agreed to run advertising on TV-13 in designated time periods with varying lengths to be run during various days of the week,

---

[1] As was made clear in defendant's prior moving papers, WOKR-TV13, now known as WHAM-TV ("TV-13"), is directly owned and operated by its licensee, Central NY News a subsidiary of Ackerley Group, Inc. The Acklerey Group and Clear Channel Communications merged in 2002. Clear Channel Broadcasting is a subsidiary of Clear Channel Communications and has no relationship to TV-13.

[2] Clover Pools contends that its business is heavily dependent on advertising to promote the sales of its products and as such plaintiff engaged Group 1 Advertising ("Group 1") as its agent for the design, creation and placement of television advertising.

which would result in a specified number of rating points for each time period, based on the actual Nielson ratings book for Rochester. However, post-analysis reports revealed shortcomings in undelivered rating points.

In response to the shortfall, plaintiff maintains that Central NY News committed to run additional advertising during subsequent time periods in order to compensate Clover Pools, to work off the undelivered rating points, and as inducement to continue contracting for additional advertising, known as cash buys. However, plaintiff contends that in the summer of 2002 defendant did not run the cash buys or "make-up" advertising for which it had committed. According to plaintiff, Group 1 protested defendant's non-performance and in August 2002 cancelled the cash buy advertising with Central NY News for the last quarter of 2002. Plaintiff maintains that this course of dealing between the parties continued until December of 2004 when defendant refused to run any more cash buy advertising and refused to run make-up advertising. Plaintiff contends that as a result of Central NY News' breach of contract and violations of GBL § 349, it has incurred damages, consisting of millions of dollars of lost sales and lost profits.

## DISCUSSION

Defendant moves to dismiss plaintiff's second claim in its Amended Complaint brought under GBL § 349 which permits recovery for "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state...." See N.Y. Gen. Bus. L. 349. To state a claim for deceptive practices under § 349, a plaintiff must show: (1) that

the act or practice was consumer-oriented; (2) that the act or practice was misleading in a material respect; and (3) that the plaintiff was injured as a result of the deceptive practice or act. See Champion Home Builders Co. v. ADT Sec. Serv., Inc., 179 F.Supp.2d 16 (N.D.N.Y. 2001); BlueCross and BlueShield of NJ v. Philip Morris USA Inc., 3 N.Y.3d 200, 205 (2004). The standard for whether an act or practice is misleading is objective, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct. See Boule v. Hutton, 320 F.Supp.2d 132, 137 (S.D.N.Y. 2004).

### I. Threshold Requirement of Consumer-Oriented Conduct

In order to invoke § 349, plaintiff must, as a threshold matter, "charge conduct that is consumer oriented." See EUA Cogenex Corp. v. North Rockland Cent. Sch. Dist., 124 F.Supp.2d 861 (S.D.N.Y. 2000); Verizon Dir. Corp. v. Yellow Book USA, Inc., 338 F.Supp.2d 422 (E.D.N.Y. 2004); see also New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 320 (1995); Cruz v. NYNEX Info. Resources, 263 A.D.2d 285, 290 (1st Dept. 2000) (Consumer-oriented conduct is a threshold pleading requirement that courts require "in order to assure the statute is applied in accordance with the legislative intent regardless of the particular parties and circumstances presented"). Moreover, plaintiff must allege facts sufficient to show that the challenged conduct has a "broader impact on consumers at large," in that it "potentially affects similarly situated consumers" in New York. See S.Q.K.F.C. v. Bell Atl. Tricon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996) (citation omitted); Oswego

<u>Laborers' Local 214 Pension Fd. v. Marine Midland Bank</u>, 85 N.Y.2d 20, 25 (1995).

Clover Pools has failed to plead the critical threshold requirement of consumer-oriented conduct before it may invoke § 349 of the GBL. <u>See</u> <u>Cruz</u>, 263 A.D.2d at 290. In this case, Clover Pools does not make any claims concerning Central NY News' general advertising, sales, or marketing materials or practices. Nowhere in the Amended Complaint does Clover Pool make any allegations regarding defendant's conduct toward any party other than plaintiff. Specifically, paragraph 44 of the Amended Complaint alleges, among other things that defendant: (a) offered to run advertising for Clover Pool without the ability or inventory to do so; (b) over sold its inventory such that it could not and did not meet its contractual commitments to Clover Pool; (c) preempted advertising promised to Clover Pool and (d) induced Clover Pool to continue to purchase advertising when it lacked either the ability or intention to honor its commitment to Clover Pool. Am. Com. ¶ 44. Therefore, contrary to plaintiff's assertions, the Amended Complaint is devoid of any facts suggesting that plaintiff had any consumer-oriented practice that was deceptive to the public.

Thus, this case involves allegations of a private contractual dispute between two parties and does not implicate individual consumers, consumer practice, or the public at large.

### II. **Plaintiff is not the type of consumer § 349 intends to protect**

While the statute does not preclude an action by one business against another,[3] the typical violation contemplated by GBL § 349 involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising. See Azby Brokerage, Inc. v. Allstate Ins. Co., 681 F.Supp. 1084 (S.D.N.Y. 1988). Here, plaintiff is a corporate business, not an individual who purchased goods and services for personal, family, or household use. See Sheth v. New York Life Ins. Co., 273 A.D.2d 72 (2000). In addition, plaintiff and defendant are both sophisticated contracting entities with equal bargaining power and the contract between them was not a common consumer good. In fact, an agent, Group 1, was involved in the negotiations for the contract between the parties.

Further, there is no claim here that the dealings and agreements between plaintiff and Central NY News were standard or typical of defendant's advertising practices with other clients. Indeed, the Amended Complaint asserts that the contracts were based on a "course of dealing" directly between Clover Pool and Central NY News. Indeed, plaintiff's agent specifically "negotiated" for spot advertisement "of varying lengths, to be run in various time slots during various days." Am. Com. ¶¶ 13, 14. Moreover, Clover

---

[3] See BlueCross and BlueShield, 3 N.Y.3d at 207 ("'a business itself will be able to use the private right of action against another business engaged in deceptive practices and thereby obtain increased legal protection'") (quoting Mem. of Atty. Gen., Bill Jacket, L. 1980, ch. 346); see also Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995), cert. denied, 516 U.S. 1114 (1996) (observing that corporate competitors now have standing to bring a claim under this statute.)

Pool alleges that defendant made several subsequent arrangements with plaintiff for make-up advertising. Am. Com. ¶¶ 18, 23. These alleged subsequent agreements were unique to plaintiff, as the agreements for make-up advertising are claimed to be the result of alleged shortfalls to plaintiff, and are described as not typical station policy. Id.  Contrary to Clover Pool's arguments, the Amended Complaint does not specifically plead a dispute arising out of plaintiff's unique and individual agreements and that any other advertiser is impacted by any of Central NY News' policies or practices or by this dispute. Thus, Clover Pool does not fit within the scope of a "consumer" under New York law.

Moreover, the consumer oriented nature of § 349 is evidenced by the modest scope of the remedies it provides. See N.Y. Gen. Bus. L. 349(h). Subsection (h) states that any person who has been injured by reason of a violation of § 349 may bring an action to recover actual damages or $50, whichever is greater and the court may, if it finds defendant acted willfully or knowingly violated the section, triple damages to a maximum of $1,000 and award attorney's fees to a successful plaintiff. See id.; see also Teller v. Bill Hayes, Ltd., 213 A.D.2d 141 (2d Dept. 1995) appeal dismissed in part and denied in part, 87 N.Y.2d 308, 321 (1995). In this case, plaintiff seeks not less than $275,000 in compensatory damages, and over $2 million in lost profits and over $4 million in lost sales, claiming that these damages resulted from defendant's alleged breach of its contracts. Am. Com., pp. 8-9. Thus, plaintiff is not the type of consumer which § 349 was intended to protect.[4]

---

[4] Plaintiff attempts to save its § 349 claim by providing the court with documentary evidence, i.e. factual declaration of Carl Ziegler, President of Clover Pool, not attached to or referenced in the Amended Complaint. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660 (2d Cir.

### III. **<u>Plaintiff's Claim is not a Matter of Public Interest</u>**

In its opposition papers, plaintiff argues that defendant's alleged conduct affects the public interest. Specifically, plaintiff claims that there is harm to the public interest when defendant, an FCC licensee, "engages in deceptive acts and practices in selling its air time to small business consumers." Opposition Mem. at 8.

Under New York law, private contract disputes, unique to the parties, do not fall within the prohibitions of § 349. <u>See</u> <u>Champion</u>, 179 F.Supp.2d at 27; <u>Procter & Gamble Co. v. Quality King</u>, 974 F.Supp. 190 (E.D.N.Y. 1997); <u>Oswego Laborers' Local</u>, 85 N.Y.2d at 25 ("Private contract disputes unique to the parties... would not fall within the ambit of the statute.") The gravamen of the complaint must be consumer injury or harm to the public interest. <u>See</u> <u>Securitron</u>, 65 F.3d at 264; <u>Azby Brokerage</u>, 681 F.Supp. at 1089 n.6. Indeed, courts generally find that a plaintiff states a claim under § 349 only when they "allege a harm to public health or safety." <u>See</u> <u>Boule</u>, 320 F.Supp.2d at 132; <u>Black Radio Network, Inc. v. NYNEX Corp.</u>, 44 F.Supp.2d 565 (S.D.N.Y. 1999) (§ 349 claim dismissed because complaint lacked reference to harm to public and instead plaintiffs focused exclusively on their own alleged injury).

Here, Clover Pool has not articulated any alleged harm to the public interest. This case also does not involve public health or safety. The only complained-of conduct in the Amended Complaint is an alleged breach of certain contractual arrangements and subsequent

---

1996) (On a motion to dismiss court may only consider allegations stated in complaint, any documents attached to it, or incorporated by reference into it, and matters of which the Court may take judicial notice). While I am unable to consider materials extrinsic to the Amended Complaint for purposes of a 12(b)(6) motion, I note that Clover Pool still cannot state a viable claim under § 349.

arrangements, allegedly made between Clover Pool and defendant. Clover Pool has been unable to articulate how the public was impacted by Central NY News' alleged failure to honor its obligations to plaintiff nor has it cited case law in support of its claim. The FCC license referred to by plaintiff applies to "broadcasting services," and not to every aspect of Central NY News' business. Indeed other courts have rejected such a broad construction of the statute in dismissing similar claims. See Bristol Meyers Squibb Co. v. McNeil-P.P.C., Inc. 786 F.Supp. 182, 215-216 (E.D.N.Y. 1992), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992).

Because plaintiff focuses exclusively on its own injury, offering no additional factual allegations beyond those that support its breach of contract claim, its claim under GBL § 349 is dismissed.

## CONCLUSION

For the reasons set forth above, I grant defendant's motion to dismiss the Second Claim of plaintiff's Amended Complaint alleging a violation of GBL § 349.

ALL OF THE ABOVE IS SO ORDERED.

                                       s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                                  United States District Judge

Dated:    Rochester, New York
            November 17, 2006